UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAMIEN REESE,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>JAMES DZURENDA, et al.,<br><br>　　　　　　Respondents. | Case No. 2:19-cv-01267-RFB-DJA<br><br>ORDER |

　　　Damien Reese's pro se 28 U.S.C. § 2254 petition for writ of habeas corpus is before the court for final disposition on the merits (ECF No. 10). As discussed below, the petition is denied.

**I.　　Procedural History and Background**

　　　On June 4, 2015, Reese pleaded guilty to possession of stolen vehicle and attempt battery with substantial bodily harm for an incident in which he approached a man, pointed a gun at him and demanded money, then struck the man with the gun, breaking his jaw (*see* exhibit 32).[1] He failed to appear for his interview for the presentence investigation report (PSI). Exh. 5. The State then filed notice of intent to seek habitual criminal treatment on October 13, 2015. Exh. 45. Reese failed to appear at sentencing and was subsequently arrested on a bench warrant. Exhs. 54, 58. In July 2016, the court adjudicated him a habitual criminal and sentenced him to a term of 10 to 25 years. Exh. 76. Judgment of conviction was entered on July 15, 2016. Exh. 78.

---

[1] Exhibits referenced in this order are exhibits to respondents' answer, ECF No. 18, and are found at ECF Nos. 19-26.

1

The Nevada Court of Appeals affirmed his conviction in December 2017, and the Nevada Supreme Court affirmed the denial of his state postconviction habeas corpus petition in April 2019. Exhs. 120, 140.

Reese dispatched his federal habeas petition for mailing in June 2019 (ECF No. 10). Respondents have answered the petition (ECF No. 18).

**II.   Legal Standards**

   a.  **AEDPA Standard of Review**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating

state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

Ineffective Assistance of Counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

Reese pleaded guilty upon the advice of counsel, thus he "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective] . . . . and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56-57, 59 (1985); *Lambert v. Blodgett*, 393 F.3d 943, 980-981 (9th Cir. 2004).

### III.     Instant Petition

### Ground 1

Reese contends that the State and his plea counsel coerced him into entering his plea because he faced the possibility of being remanded into custody based upon his prior failures to appear (ECF No. 10, pp. 3-9).

The United States Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Bousley v. U.S*., 523 U.S. 614, 621 (1998). A valid guilty plea is one that is both knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The habeas petitioner bears the burden of establishing that

6

plea was not knowing or voluntary. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). To determine whether a plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Where a defendant was represented by counsel during the plea process, and enters a plea based on advice from counsel, the voluntariness of the plea depends on whether the advice "was within the range of competence demanded of attorneys in criminal cases," not based on whether the court would retrospectively consider counsel's advice to be right or wrong. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

In May 2015, the State filed a motion to revoke bail. Exh. 21. Reese claims that the State filed the motion because he failed to appear previously at hearings that his attorney told him he did not need to attend. However, the State pointed out in the motion that Reese had picked up new charges in six more instances while out on bail on this case, ranging from violent offenses, weapons offenses, trespass violations and theft. *Id*. at 10. The State argued that Reese was a danger to the community. The motion makes no mention of any failures to appear.

The Nevada Supreme Court affirmed the denial of this claim in Reese's state postconviction petition:

> First, appellant claimed that the State and his attorney coerced him into pleading guilty. Specifically, he claimed that he failed to appear in court proceedings based on counsel's advice, which prompted the State to move to revoke bail and provoked him to plead guilty. He also claimed that he did not clearly express to his attorney that he intended to plead guilty. We conclude that appellant failed to demonstrate that his guilty plea was involuntary. The State sought to revoke bail in response to appellant accruing additional charges, not his failure to appear. Appellant also acknowledged that he was pleading guilty of his own volition and had not been coerced into doing so. Regardless of how he communicated with his counsel, appellant expressed his explicit intent to plead guilty in his guilty plea agreement and in open court. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984) (holding a defendant entitled to evidentiary hearing where he has raised specific factual allegations that, if true, would entitle him to relief).

Exh. 140, pp. 3-4.

Reese's claim is belied by the record. The June 2015 plea canvass reflects that Reese informed the court that he understood the plea agreement and entered into it freely and voluntarily. Exh. 33.

He has failed to demonstrate that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1.

**Ground 2**

Reese argues that the court did not canvass him about the fact that his offense could be subject to Nevada's habitual criminal sentencing enhancement (ECF No. 10, pp. 11-17). He claims the guilty plea agreement contained conflicting terms regarding whether he could be adjudicated a habitual criminal.

The court did not canvass Reese about potential habitual criminal treatment. *See* exh. 33. However, the plea agreement expressly states:

> I understand and agree that, if I fail to interview with the Department of Parole and Probation, fail to appear at any subsequent hearings in this case, or an independent magistrate by affidavit review, confirms probable cause against me for new criminal charges including reckless driving or DUI, but excluding minor traffic violations, the State will have the unqualified right to argue for any legal sentence and term of confinement allowable for the crime(s) to which I am pleading guilty, including the use of any prior convictions I may have to increase my sentence as an habitual criminal to five (5) to twenty (20) years, life without the possibility of parole, life with the possibility of parole after ten (10) years, or a definite twenty-five (25) year term with the possibility of parole after ten (10) years.

Exh. 32, p. 3.

The Nevada Supreme Court rejected this claim:

> Second, appellant claimed that the district court had not canvassed him about the range of punishments he faced if he were sentenced as a habitual criminal. He asserted that the guilty plea agreement was confusing and he did not understand it. We conclude that this claim lacks merit. Under the terms of the plea agreement, the possibility that appellant would face habitual criminal treatment was not a direct consequence of the guilty plea but it was dependent on his conduct after entry of the guilty plea. Moreover, the plea agreement informed him of the penalties he faced under habitual

criminal treatment and the circumstances under which the State may pursue it. *See Lee v. State*, 115 Nev. 207, 210, 985 P.2d 164, 166 (1999) (providing that where the record shows the defendant was otherwise fully informed of the consequences of his plea, he "will not be heard to complain that this information did not come directly from the district court"). Contrary to appellant's claim that the plea agreement was confusing, he affirmed that he understood it. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

Exh. 140, pp. 4. The plea agreement does not set forth conflicting terms. Ground 2 lacks merit. Reese has not shown that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Ground 2 is, therefore, denied.

**Ground 3**

Reese claims that his counsel was ineffective for failing to ask for a continuance for his sentencing hearing because another judge was sitting in and for not presenting evidence to rebut the state's ability to seek habitual criminal enhancement (ECF No. 10, pp. 19-28). He alleges that he complied with the plea agreement.

The Nevada Supreme Court affirmed the denial of this claim in Reese's state postconviction petition:

> Appellant also claimed that his counsel should have presented evidence at sentencing that he attended necessary hearings and interviews as well as seek a continuance so that the sentencing hearing could be conducted by Judge Villani, who had presided over the prior proceedings. . . .
>
> We conclude that appellant failed to demonstrate deficient performance. The record shows that appellant failed to attend hearings and interviews with the Division of Parole and Probation, which prompted the State to pursue habitual criminal treatment. Counsel could not be expected to argue facts clearly contradicted by this record. *See generally Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) (counsel cannot be deemed ineffective for failing to make futile objections). However, counsel did argue that appellant's obligations to other courts excused some of his absences. While appellant alleged that counsel told him he did not need to attend some hearings, he did not allege that counsel instructed him to not appear for the interview at the probation department. He asserts that he later appeared for an interview, but it was after the State had filed its notice in response to his prior failure to appear. Appellant also failed to demonstrate prejudice. Appellant's failure to appear at subsequent hearings was not the only

9

> violation of his obligations under the plea agreement. He had been arrested for additional charges after entry of his guilty plea. Considering this conduct, he failed to demonstrate a reasonable probability of a different outcome at sentencing had it occurred before Judge Villani. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

Exh. 140, pp. 5-6.

Reese has failed to explain what his attorney should have presented to support his contention that he did not breach the plea agreement. Reese failed to attend his PSI interview. He was charged with several new offenses while out on bail. He failed to attend the sentencing hearing in January 2016 despite Judge Villani's specific directive to Reese in open court a month earlier. Exhs. 53, 54. Counsel told the sentencing court that in some instances where the State claimed Reese failed to appear that he and Reese had been in the courthouse—including at hearings on another case. Exh. 76. But the State emphasized that Reese failed to appear for his PSI interview and had six prior felony convictions, including violent offenses and weapons charges, not counting the case that he was currently serving time on that was part of a package deal with this case. The State also stressed the violent nature of this case, where the victim had to have his broken jaw wired closed for several weeks and underwent multiple surgeries.

The sentencing court specifically discussed the "triggering" provision of the guilty plea agreement, set forth above in the discussion of ground 2. The court concluded that when Reese failed to appear for the PSI interview, that provision became applicable, and the State had the right to argue for habitual criminal adjudication.

Reese has not demonstrated a reasonable probability of a more favorable outcome in front of Judge Villani. Reese has not shown that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.

Accordingly, the petition is denied in its entirety.

**IV.    Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Reese's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of Reese's petition.

V.   **Conclusion**

**IT IS THEREFORE ORDERED** that the petition (ECF No. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for status check (ECF No. 32) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly and close this case.

DATED: 2 March 2023.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE